S. SHANE STROUD (15266)
Assistant Utah Attorney General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: sstroud@agutah.gov
*Attorneys for Defendant Dani Herzog*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| HONOR WILLSON, | **MOTION TO DISMISS** |
|---|---|
| Plaintiff, | |
| v. | |
| DANI HERZOG and RUSTY BINGHAM, | Case No. 1:18-CV-00076 |
| Defendants. | Judge Brooke C. Wells |

Defendant Dani Herzog, by and through counsel and pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and Local Rule 7-1, hereby moves the Court to dismiss Plaintiff Honor Willson's Complaint.

**RELIEF SOUGHT**

The Court should dismiss Ms. Willson's Complaint against Ms. Herzog for four reasons. First, Ms. Willson's Complaint fails to properly plead any legally cognizable claims against Ms. Herzog. Second, even if the Court determined Ms. Willson's complaint did plead cognizable claims, this Court lacks subject matter jurisdiction over those claims because they arise from Utah

state court judgments. Third, Ms. Willson lacks standing to assert any of her federal claims. And, finally, even if the Court did have jurisdiction, Ms. Herzog is entitled to qualified immunity as a matter of law.

## **RELEVANT FACTS[1]**

This case arises from a custody and guardianship action involving a minor child, L.M.[2] That action was filed by the State of Utah ("the State") in the Utah Second District Juvenile Court.[3] Defendant Dani Herzog is a Utah Department of Child and Family Service employee involved in that custody and guardianship action.[4] Plaintiff Honor Willson is L.M.'s maternal grandmother.[5] After the State took custody of L.M., Ms. Willson attempted to enter the case and to obtain guardianship of L.M.[6] The State declined to award Ms. Willson guardianship, did not permit her to enter the case, and eventually terminated L.M.'s mother's parental rights on April 24, 2018.[7]

During the pendency of the custody and guardianship action, L.M.'s mother, Reeann Meenderink, filed a lawsuit against Ms. Herzog in the Utah Second District Court.[8] Ms.

---

[1] Because part of the Court's consideration involves subject matter jurisdiction, this section includes facts pertaining to relevant Utah Second District Juvenile and Utah Second District Court cases and citations to documents filed in those cases. In considering these facts and documents, the Court need not convert this into a Rule 56 motion because "[a] court has wide discretion to allow affidavits, [and] other documents . . . to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Further, this Court need not rely on any outside facts in deciding the arguments pertaining to improper pleading, standing, and qualified immunity, as those issues may be resolved based entirely upon Ms. Willson's complaint and applicable law.
[2] *See* Plaintiff's Complaint [Doc. 1].
[3] *See id.* at 2-3.
[4] *See id.* at 2.
[5] *See id.* at 6-7.
[6] *See id.* at 5.
[7] *See id.* at 5-6.
[8] *See* Ms. Meenderink's Utah Second District Court Complaint, attached hereto as **Exhibit 1**.

2

Meenderink's complaint alleged Ms. Herzog committed a "trespass" by taking custody of L.M.[9] Ms. Meenderink requested the court return L.M. to her custody and also requested monetary damages of "$10,000.00 per wrongdoer."[10] Ms. Herzog moved to dismiss Ms. Meenderink's complaint because she failed to plead cognizable claims, because the district court did not have subject matter jurisdiction, and because Ms. Herzog is immune from suit.[11] The district court agreed and granted the motion, dismissing Ms. Meenderink's claims against Ms. Herzog with prejudice.[12]

Ms. Willson also filed a lawsuit before the Utah Second District Court, this time against Assistant Utah Attorney General David Benard (the State attorney who signed the Verified Petition for Custody and Guardianship).[13] Similar to Ms. Meenderink's complaint, Ms. Willson alleged Mr. Benard committed a "trespass" by taking custody of L.M.[14] Ms. Willson requested the court relinquish custody of L.M. and award $100,000 in monetary damages "as well as the maximum amount allowed by law for the ongoing injury."[15] Mr. Benard moved to dismiss the complaint because the district court did not have subject matter jurisdiction and because Mr. Benard is immune from suit.[16] The district court agreed and granted the motion, dismissing Ms. Willson's claims against Mr. Benard with prejudice.[17]

---

[9] *See id.*
[10] *See id.*
[11] *See* Utah Second District Court Motion to Dismiss Ms. Meenderink's Complaint at 1-2, attached hereto as **Exhibit 2**.
[12] *See* Order Granting Motion to Dismiss, attached hereto as **Exhibit 3**.
[13] *See* Ms. Willson's Utah Second District Court Complaint, attached hereto as **Exhibit 4**.
[14] *See id.*
[15] *See id.*
[16] *Seee* Utah Second District Court Motion to Dismiss Ms. Willson's Complaint at 3-5, attached hereto as **Exhibit 5**.
[17] *See* Order Granting Motion to Dismiss, attached hereto as **Exhibit 6**.

Ms. Willson now brings the current action, again alleging the State committed a "trespass" when it took custody of L.M.[18] In addition to this claim, Ms. Willson's Complaint alleges two counts purportedly arising under 42 U.S.C.A. § 1983: first, that the State prevented L.M. from living with her mother without "outside interference[,]" and, second, that the Utah Second District Juvenile Court violated Ms. Meenderink's right to due process when it failed to take certain matters into consideration before deciding the custody petition.[19] Ms. Willson alleges she was injured because the Utah courts "ordered her daughter to remain in Utah to be reunited with [L.M.] who they refused to give up jurisdiction," because Ms. Willson was denied guardianship, and because the Utah state court judge declined to allow "[Ms. Willson] to enter the case."[20] She now seeks "damages for harming an entire family," damages on behalf of her daughter, Ms. Meenderink, and for "money [Ms. Willson] has lost due to travel[,] lawyers[,] [and] shelter for [her] daughter and the loss of [her] granddaughter . . . ."[21]

For four reasons, none of Ms. Willson's claims are cognizable as a matter of law. First, Ms. Willson's Complaint fails to plead facts against Ms. Herzog sufficient to state any actionable claim. Second, even if Ms. Willson's Complaint did plead sufficient facts, this Court lacks jurisdiction over Ms. Willson's claims because the Complaint improperly asks this Court to sit as a *de facto* appellate court in review of the underlying Utah state court proceedings. Third, even if the Court decided it did have jurisdiction, Ms. Willson lacks standing to assert the claims in her

---

[18] *See* Plaintiff's Complaint at 4. Although Ms. Herzog does not believe the description is proper or legally accurate, Ms. Willson's Utah Second District Court Complaint seems to indicate the "property" at issue in the trespass action is Ms. Willson's granddaughter, L.M. *See* Ms. Willson's Utah Second District Court Complaint.
[19] *See id.* at 4-7.
[20] *See id.* at 5.
[21] *See id.* at 6.

4

Complaint because all the claims belong not to Ms. Willson, but instead to her daughter, Ms. Meenderink. And, finally, even if the Court were to determine the claims are properly pled, that it has jurisdiction, and that Ms. Willson has standing, Ms. Herzog is immune from suit. The Court should accordingly dismiss Ms. Willson's Complaint.

## MOTION TO DISMISS STANDARD

*Rule 12(b)(1)*

Federal courts must have a statutory or constitutional basis to exercise jurisdiction.[22] The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper.[23] "Mere conclusory allegations of jurisdiction are not enough."[24] "[A] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."[25]

*Rule 12(b)(6)*

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the factual allegations in the Complaint, if true, would entitle the plaintiff to a legal remedy.[26] "The court's function on a Rule 12(b)(6) motion is not to weigh potential

---

[22] *See Devon Energy Prod. Col, L.P. v. Mosaic Potash*, 693 F.3d 1195, 1201 (10th Cir. 2012) (noting federal courts are "courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute" (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)).
[23] *See id.*
[24] *See United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).
[25] *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).
[26] *See Seamons v. Snow*, 84 F.3d 1226, 1231 (10th Cir. 1996) ("Dismissal is inappropriate under [Rule] 12(b)(6) unless the plaintiff can prove no set of facts in support of his claims to entitle him to relief.").

evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[27] The court must accept all well-pleaded facts as true and construe those facts liberally "in the light most favorable to the nonmoving party."[28]

A claim must be dismissed, however, if the complaint does not contain enough facts to make the claim plausible on its face.[29] "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[30] A Court may consider only facts actually alleged and should disregard all conclusory allegations made without supporting factual averments.[31] "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief."[32]

## ARGUMENT

### I. MS. WILLSON'S COMPLAINT FAILS TO STATE ANY COGNIZABLE CLAIMS AGAINST MS. HERZOG

Under Rule 8(a)(2) of the Federal Rule of Civil Procedure, a "pleading which states a claim for relief" must include "a short and plain statement of the claim showing that the pleader is entitled

---

[27] *Sutton v. Utah School for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).
[28] *Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir. 2006).
[29] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[30] *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).
[31] *See Bryan v. Stillwater Bd. of Realtors*, 578 F.2d 1319, 1321 (10th Cir. 1977) (noting "[a]llegations of conclusions or of opinions" are not sufficient absent facts respecting statement of claim).
[32] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotation marks omitted).

to relief."[33] This standard requires that a pleading provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[34] Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."[35]

In order to meet the "facial plausibility" requirement, a plaintiff must plead facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[36] This standard requires, at the very least, that a complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . ."[37] To do this, "a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated."[38]

Ms. Willson has not met the pleading standard in this case. Although throughout her Complaint Ms. Willson refers generally to facts pertaining to the underlying custody action, Ms. Willson never mentions Ms. Herzog by name, nor does she describe how Ms. Herzog's conduct caused Ms. Willson any alleged harm. Ms. Willson never explains what Ms. Herzog did or did not

---

[33] Fed. R. Civ. P. 8(a).
[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[35] *Id.* (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[36] *Id.*
[37] *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted) (alteration in original).
[38] See *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007); *see also Protheroe v. Masarik*, No. 18-CV-2128-JAR-TJJ, 2018 WL 3213322, at *2 (D. Kan. Apr. 12, 2018) (noting a plaintiff is expected to "explain the who, what, where, when, or how" of the violations alleged and how each defendant is connected to the violations); *S.D. v. Lajeunesse*, No. 15-CV-02404-WJM-CBS, 2017 WL 262692, at *5 (D. Colo. Jan. 20, 2017) ("Plaintiffs are encouraged to elucidate the "who, what, where, when, why, and how" to the greatest extent of their current knowledge.").

do that led to Ms. Willson's alleged injury, where or when any involvement took place, or which of Ms. Willson's rights Ms. Herzog allegedly violated. In fact, Ms. Willson's only possible reference to Ms. Herzog appears on page four of her Complaint, where Ms. Willson alleges the "respondents" or "agencies" had a duty to perform some type of investigation. This vauge reference is not sufficient to give Ms. Herzog "fair notice" of the claims against her since it does not explain the what, where, when, and how of Ms. Willson's allegations against Ms. Herzog. Thus, even if the Court construes Ms. Willson's Complaint generously, the Complaint does not "allow[] the court to draw the reasonable inference that [Ms. Herzog] is liable for the misconduct alleged."[39] Ms. Willson's Complaint should accordingly be dismissed.

## II. THIS COURT LACKS JURISDICTION OVER MS. WILLSON'S CLAIMS

This Court lacks jurisdiction to hear the merits of Ms. Willson's claims because she is asking the Court to "review and reject" prior Utah state court proceedings and orders.[40] Under the *Rooker-Feldman* doctrine, a federal court is generally precluded from "exercising appellate jurisdiction over claims actually decided by a state court and claims inextricably intertwined with a prior state-court judgment."[41] This is because the available avenue for relief for those who seek redress from state-court judgments is the state's appellate process.[42] "A claim is inextricably

---

[39] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[40] *PJ ex rel. Jensen v. Wagner,* 603 F.3d 1182, 1194 (10th Cir. 2010).
[41] *Id.* (citing *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir.2006)).
[42] *See Davis v. Garcia*, 953 F. Supp. 2d 1205, 1215, 1218 (D. Utah 2013) ("Plaintiffs did not appeal the numerous Juvenile Court Orders relating to their parental and custody rights, though that would have been the appropriate avenue for relief. This court, by contrast, lacks the requisite appellate authority to review and reject, or in any way undo the Juvenile Court's decisions. The court therefore does not have jurisdiction over Plaintiffs' Fourth Amendment claim under the *Rooker–Feldman* doctrine." (cleaned up)); *see also Bear v. Patton*, 451 F.3d 639, 640-41 n.2 (10th Cir. 2006) (observing that, under *Rooker-Feldman*, "state-court losers" may not turn around ask the federal courts to review the judgment rendered by the state court).

8

intertwined if the state-court judgment caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress."[43] The *Rooker-Feldman* doctrine also applies to "persons directly bound by the state-court judgment, whether or not they appear in the case caption."[44]

*Rooker-Feldman* bars all Ms. Willsons' claims in this case because all of her alleged injuries were caused by Utah state court judgments. Although Ms. Willson asserts several claims before this court, all of them stem from the Utah Second District Juvenile Court's entry of the custody petition.[45] In her Complaint, Ms. Willson alleges L.M. was deprived of the right to live with her mother and that her daughter was deprived of her due process.[46] Both of these claims flow directly from decisions and orders entered in the Utah state custody proceeding. Ms. Willson's Complaint acknowledges this fact, noting her injuries arose because the Utah juvenile court ordered Ms. Meenderink to remain in Utah, because the court denied Ms. Willson guardianship of L.M., and because the court denied Ms. Willson's request to enter the custody action.[47] In other words, "the state-court judgement caused, actually and proximately, the injur[ies]" for which Ms. Willson seeks redress before this Court.[48] The proper channel for Ms. Willson to address any Utah court decision with which she disagrees is in the Utah appellate system, not the federal courts. Ms.

---

[43] *Weaver v. State of Utah,* No. 1:06-CV-82 TS, 2011 WL 3957527, at *3 (D. Utah Sept. 7, 2011) (cleaned up) (quoting *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 473 (10th Cir.2002)).
[44] *Davis v. Garcia*, 953 F. Supp. 2d 1205, 1216 (D. Utah 2013) (emphasis omitted); *see also Brackman v. Indiana*, 93 F. App'x 989, 992 (7th Cir. 2004) (unpublished) ("[A] plaintiff may not seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action.") (quoting *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir.1993)).
[45] *See* Ms. Willson's Complaint at 3 [Doc. 1].
[46] As discussed in Section III, even if *Rooker-Feldman* did not divest the Court of jurisdiction, Ms. Willson does not have the ability to assert these claims because they belong to L.M and Ms. Meenderink, not Ms. Willson.
[47] *See* Ms. Willson's Complaint at 5 [Doc. 1].
[48] *Weaver,* 2011 WL 3957527, at *3.

Willson should not be allowed to relitigate claims before this Court when the Utah state court has already considered and entered judgment on the inextricably intertwined custody action. The Court should accordingly dismiss Ms. Willson's complaint.

### III. MS. WILLSON LACKS STANDING TO BRING HER § 1983 CLAIMS

Federal courts are limited in their power to decide cases or controversies.[49] In determining whether a case or controversy is justiciable, part of the analysis includes the doctrine of standing.[50] To establish a party has standing, a plaintiff bears the burden of establishing three elements: injury in fact, causal connection, and redressability.[51] "[T]he injury in fact test requires more than an injury to a cognizable interest. It requires that the party seeking review be [her]self among the injured."[52] Thus, in general, a plaintiff may not assert the constitutional rights or interests of another.[53]

Under this standard, Ms. Willson has no standing to bring any of two federal claims, which relate only to Ms. Meenderink or L.M. and not Ms. Willson. The first of these claims alleges that the Utah state courts deprived Ms. Meenderink and L.M of the right "to live without outside

---

[49] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992) ("[J]udicial power exists only to redress or otherwise to protect against injury to the complaining party." (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)).

[50] *See Lujan*, 504 U.S. at 560 ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement.").

[51] *See id.* at 561 ("The party invoking federal jurisdiction bears the burden of establishing these elements.").

[52] *Id.* at 563 (internal quotation marks and citation omitted).

[53] *See Warth*, 422 U.S. 490, 499 (1975) ("[T]his Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."); *see also Flast v. Cohen*, 392 U.S. 83, 99 n.20 (1968) ("Thus, a general standing limitation imposed by federal courts is that a litigant will ordinarily not be permitted to assert the rights of absent third parties.").

interference."[54] The second alleges the Utah state courts did not afford Ms. Meenderink due process.[55] Neither, however, allege any of Ms. Willson's own constitutional rights were violated. As a result, this Court could not provide any relief to Ms. Willson that would redress either of these alleged injuries; that redress could only be afforded to Ms. Meenderink or L.M, neither of whom are parties to this lawsuit.[56] The Court should accordingly dismiss all Ms. Willson's claims with prejudice.

## IV. MS. HERZOG IS ENTITLED TO QUALIFIED IMMUNITY

### A. The Qualified Immunity Standard

As a State DCFS employee, Ms. Herzog is entitled to qualified immunity. Qualified immunity shields government officials from § 1983 damages suits so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[57] When a state official asserts qualified immunity, she creates "a rebuttable presumption" that she is immune from the plaintiff's § 1983 claims.[58] The Supreme Court has held that qualified immunity protects "all but the plainly incompetent or those who knowingly

---

[54] *See* Ms. Willson's Complaint at 4 [Doc. 1].
[55] *See id.*
[56] Indeed, the only claim Ms. Willson seems to be asserting on her own behalf is her state-law trespass claim. But that claim has already been considered—and dismissed with prejudice—by the Utah state courts. Thus, to the extent Ms. Willson has standing to sue on that claim, the doctrine of res judicata prevents this court from relitigating it. *See MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005) ("The doctrine of res judicata, or claim preclusion, will prevent a party from relitigating a legal claim that was or could have been the subject of a previously issued final judgment."). Dismissal of Ms. Willson's § 1983 claims would also bar this court from hearing Ms. Willson's trespass claim, given that claim arises under Utah state law and thus the Court has only supplemental jurisdiction over the claim under 28 U.S.C.A. § 1367.
[57] *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006).
[58] *See Medina v. Cram*, 252 F.3d 1124, 1129 (10th Cir. 2001).

11

violate the law."[59] Qualified immunity "may be denied only if, on an objective basis, it is obvious that no reasonably competent [official] would have concluded that the conduct was lawful at the time the defendant acted."[60] In child removal cases, "[i]t is precisely the function of qualified immunity to protect state officials . . . provided that there is an objectively reasonable basis for their decision, whichever way they make it."[61] In those cases, "[t]he issue is not whether it was absolutely necessary to remove the child or whether a more sensitive course might have been [taken]. The issue is whether it was objectively reasonable for the defendants to make the decision they made . . . ."[62]

Two elements exist in the qualified immunity analysis: first, whether under the facts alleged, the government officials violated a constitutional right; and, second, whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct.[63] If the plaintiff fails to satisfy any part of the qualified immunity inquiry, "the court must grant the defendant qualified immunity."[64]

As noted above, to the extent Ms. Willson is asserting violations of Ms. Meenderink's or L.M.'s constitutional rights, Ms. Willson does not have standing to bring those claims. However, as discussed below, to the extent the Court determines Ms. Willson is asserting violations of her own constitutional rights, her claims fail both prongs of the qualified immunity analysis.

---

[59] *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).
[60] *Halley v. Okla. ex rel. Okla. State Dep't of Human Serv.,* 176 F. Supp. 3d. 1268, 1277-78 (2016) (internal quotation marks omitted) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).
[61] *Van Emrik v. Chemung Cty. Dep't of Soc. Serv.*, 911 F.2d 863, 866 (2d Cir. 1990).
[62] *Id.* (alterations added).
[63] *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018).
[64] *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).

### 1. *Violation of a Constitutional Right*

In order to establish violation of a constitutional right, a plaintiff is obligated to "provide the grounds of his entitle[ment] to relief," which "requires more than labels and conclusions."[65] A complaint is insufficient if it "tenders naked assertion[s] devoid of further factual enhancement."[66] Thus, to state a cognizable claim, a plaintiff must allege an "affirmative link" between the defendant and the offensive conduct.[67] To do this, a claimant must plead sufficient facts to show "(1) personal involvement; (2) causation, and (3) state of mind."[68]

The allegations in Ms. Willson's Complaint are insufficient to establish Ms. Herzog violated anyone's constitutional right, let alone Ms. Willson's. As previously discussed, Ms. Willson has failed to make any specific allegations against Ms. Herzog. Nowhere in her complaint does she mention Ms. Herzog by name or indicate exactly how she was involved in any allegedly offensive conduct. Likewise, none of the facts Ms. Willson alleges in her Complaint show any causative link between any conduct on Ms. Herzog's part and any injury to Ms. Willson. Ms. Willson's Complaint also does not address Ms. Herzog's state of mind. At most, Ms. Willson states the respondents had a responsibility to investigate certain claims made in the underlying custody action. However, the Complaint is devoid of any facts showing how Ms. Herzog allegedly

---

[65] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted) (alteration in original).
[66] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted) (alteration in original).
[67] *See Perry v. Duborow*, 892 F.3d 1116, 1121 (10th Cir. 2018) (holding plaintiff was required to establish an affirmative link between the sheriff and the sexual assault by a jail guard).
[68] *Id.* (citation omitted).

breached this responsibility, how that breach caused a violation of Ms. Willson's constitutional rights, and how that violation damaged Ms. Willson. Indeed, it is unclear on the face of the Complaint exactly *what* right Ms. Willson is asserting was violated. Without this showing, Ms. Willson has not met her burden of establishing Ms. Herzog violated any of her constitutional rights and her Complaint must accordingly be dismissed with prejudice.

### 2. *Clearly Established Right*

To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right."[69] The inquiry is "whether the law puts officials on fair notice that the described conduct was unconstitutional."[70] "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits."[71] The Supreme Court has repeatedly held that courts should not "define clearly established law at a high level of generality."[72] Rather, the dispositive question is "whether the violative nature of *particular* conduct is clearly established."[73] The rule must be defined with a "high degree of specificity" so that it is clear to a reasonable government official that his conduct would be unlawful in that particular situation.[74] The body of case law should put the unlawfulness of the conduct "beyond debate."[75]

---

[69] *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (alteration in original) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).
[70] *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).
[71] *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008) (citation omitted).
[72] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).
[73] *Id.* (citation omitted) (emphasis in original).
[74] *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (internal quotation mark omitted) (citation omitted).
[75] *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citation omitted).

In the context of child custody actions, the Eleventh Circuit has summarized the state of "clearly established" constitutional violations as applicable in the qualified immunity analysis, observing:

> When the law contemplates some kind of balancing test to determine the ultimate question of lawfulness or unlawfulness of an act, qualified immunity almost always applies to shield the public servant defendant: the lack of bright lines associated with balancing tests prevents the preexisting law, given the circumstances of a specific case, from having been clearly established when the public servant took the step that resulted in his later being a defendant in a lawsuit.[76]

"So, state officials who act to investigate or to protect children where there are allegations of abuse almost never act within the contours of clearly established law."[77]

In this case, Ms. Willson has not met her burden of showing that anything Ms. Herzog did violated a clearly established right. Again, it is unclear whether Ms. Willson's is alleging any of her rights were violated or, instead, if only the rights of third-parties were violated. Assuming, however, that Ms. Willson alleges her own right was violated, she has not articulated precisely what right that is, let alone that the right is clearly established as a matter of law. Instead, Ms. Willson's complaint makes only vague, general allegations that Ms. Herzog failed to properly undertake some type of investigation and that this may have led to some sort of adverse decision in the underlying custody action. There is no citation to any authority establishing the constitutional right at issue and no citation to any facts or authority showing the right was clearly established such that Ms. Herzog would know her conduct was unlawful. It is also unclear from the face of the complaint whether Ms. Willson is even alleging Ms. Herzog's actions was unlawful

---

[76] *Foy v. Holston*, 94 F.3d 1528 n.8 (11th Cir. 1996).
[77] *Id.* at 1537 (quotation omitted).

or, instead, whether she simply believes Ms. Herzog's lawful actions contributed in some way to Utah court decisions with which Ms. Willson takes issue.

Absent these showings, Ms. Willson cannot prevail on her claims against Ms. Herzog, who as an employee of the State of Utah acting within the scope of her authority is entitled to qualified immunity. The Court should accordingly dismiss Ms. Willson's complaint against Ms. Herzog with prejudice.

## **CONCLUSION**

For the reasons set forth above, Ms. Herzog respectfully requests that the Court dismiss Willson's claims against her with prejudice.

DATED this 27th day of August, 2018.

SEAN D. REYES
Utah Attorney General


/s/ S. Shane Stroud
S. SHANE STROUD
Assistant Utah Attorney General
*Attorney for Defendant Herzog*

## **CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5 and Local Rule 5-1, I certify that on August 27, 2018, I served the foregoing **MOTION TO DISMISS** on the following via U.S. mail, first-class postage prepaid:

    Ms. Honor Willson
    750 East 3rd Street, #V21
    Pomona, California 91766

                                    /s/ McKenzie B. Hampton